IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | * Criminal No. CCB-18-0639 |
| | * |
| MAURICE HILTON | * |

**********

## MEMORANDUM

Maurice Hilton is a federal prisoner who is serving a forty-eight-month sentence for unlawful possession of a firearm. (Judgment, ECF No. 37). Now pending is Hilton's motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) (the "compassionate release" statute), based on his particular vulnerability to COVID-19. (ECFs No. 57, 67).[1] The government opposes the motion, (ECF No. 59), and Hilton has replied (ECF No. 61).[2] For the reasons explained below, the motion will be denied.

## BACKGROUND

On November 24, 2018, Baltimore Police Officer Justin Vitek witnessed Hilton run a red light at the intersection of Payson Street and Frederick Avenue. (Gov't Sentencing Memo, ECF No. 30 at 2-3). As Officer Vitek prepared a traffic citation for running the red light and driving on a suspended license, he noticed Hilton exit the vehicle and begin running south on Payson street. (*Id.* at 3). Officer Vitek caught and arrested Hilton, and in the process recovered a loaded Lorcin .380 handgun that fell from Hilton's person. (*Id.*) While in jail awaiting sentencing, Hilton was

---

[1] Hilton's motion for sentencing reduction, ECF No. 57, was filed by counsel on November 3rd, 2020. Hilton personally supplemented this motion with additional information about the COVID-19 outbreak at FCI Fort Dix on February 4, 2021, in ECF No. 67.

[2] Hilton also filed supplemental correspondence, (ECF Nos. 62-64, 66), primarily addressing COVID-19 statistics at FCI Fort Dix. The government responded to ECF Nos. 62-64. (ECF No. 65). Both ECF Nos. 66 and 67 note that Hilton contracted COVID-19 while incarcerated.

1

recorded speaking to a friend referred to as "Buddha," whom he told that he would have "shot that sh*t out" if he had his two guns on him at the time of his arrest. (*Id.* at 3-4).[3]

Hilton pled guilty without a plea agreement to one count of Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g). (Judgment, ECF No. 37 at 1). He was sentenced to forty-eight-months imprisonment, followed by a three-year term of supervised release. Hilton appealed the sentence, and the Fourth Circuit affirmed on July 10, 2020. (ECF No. 51).

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194. As part of the Act, Congress amended 18 U.S.C. § 3582(c), which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. Before the First Step Act, a court could review a prisoner's sentence pursuant to § 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons" ("BOP"). *Id.* But under the amended statute, a court may conduct such a review also "upon motion of the defendant," if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id.* The court may authorize compassionate release if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" warrant it. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

Hilton requests compassionate release on the basis that his underlying health conditions place him at greater risk of serious illness related to COVID-19. The government does not contest

---

[3] At sentencing the court determined to consider that remark was "bluster," but also was an indication Hilton had two guns. (Sentencing Tr., ECF No. 47 at 17-18)

2

that Hilton's motions are properly before the court. (ECF No. 59 at 7 ("Hilton has exhausted his administrative remedies under the relevant statute.")). The only issues are (1) whether "extraordinary and compelling reasons" warrant reduction of Hilton's sentence, and (2), if there is such a reason, whether the § 3553(a) factors weigh in favor of a sentence reduction.

## DISCUSSION

Under 28 U.S.C. § 994(t), the United States Sentencing Commission is responsible for defining "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). According to the Commission's Policy Statement, "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) "other reasons" as determined by the BOP. *See* U.S.S.G. §1B1.13 cmt. n.1(A)–(D). The BOP criteria for "other reasons" justifying a sentence reduction are set forth in Program Statement 5050.50 ("Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)"). As the Fourth Circuit has held, however, the court possesses independent discretion—guided, but not bound by, Sentencing Commission and BOP criteria—to determine whether there are "extraordinary and compelling reasons" to reduce a sentence. *See United States v. McCoy*, 981 F.3d 271, 288 (4th Cir. 2020).[4]

---

[4] The court's independent discretion stems from the First Step Act of 2018, which, *inter alia*, amended 18 U.S.C. 3582(c) with the stated goal of "increasing the use and transparency of compassionate release." *See* First Step Act § 603(b), Pub. L. No. 115-391, 132 Stat. 5194; *see*

3

Hilton argues that his risk of developing serious illness related to COVID-19 due to his underlying medical conditions (obesity and a history of smoking tobacco and marijuana) constitutes an "extraordinary and compelling" reason to reduce his sentence. (ECF No. 57 at 2-3). The Centers for Disease Control ("CDC") has issued guidance on underlying conditions that increase an individual's risk of severe illness related to COVID-19. *See Underlying Medical Conditions Associated with High Risk for Severe COVID-19: Information for Healthcare Providers*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (updated May 13, 2021). The CDC distinguishes between those conditions that are "supported by meta-analysis/systematic review" (e.g., cancer), those that are "supported by mostly observational. . . studies" (e.g., Down syndrome), and those that are supported only by "mixed evidence" (e.g., asthma). *Id.* Obesity is in this first group, as is a history of smoking. *Id.* Marijuana usage appears in none of these lists of comorbidities. *Id.*

The government concedes that, with a BMI of 33.9, as calculated from the Medical Records provided (ECF No. 59, Ex. B at 22), Hilton is considered obese and therefore at an increased risk of severe illness related to COVID-19. Hilton has thus met his burden of providing underlying conditions that constitute "extraordinary and compelling reasons" for compassionate release. (*See* ECF No. 59 at 7-8).[5]

---

*also McCoy*, 981 F.3d at 277-78 (explaining Policy Statement § 1B1.13's partial inconsistency with the First Step Act amendments to § 3582(c)).

[5] The court notes adequate documentation of "moderate" marijuana smoking (ECF 59, Ex. B at 36), however, this is not a condition listed by the CDC as a co-morbidity to COVID-19. *See Conditions Associated with High Risk for Severe COVID-19*, CDC. It does not present, by itself, "extraordinary and compelling circumstance[]" to reduce his sentence. The documentation of his tobacco usage is less clear, as his medical records indicate "Tobacco Usage: Denied" in one instance, but say "Tobacco Products: Yes" in another. (*Id.* at 22, 41). As the evidence of Hilton's history of smoking is ambiguous, the court does not rely on it in this analysis. The court additionally acknowledges Hilton's concerns about the spread of COVID-19 at FCI Fort Dix,

4

The compassionate release statute, however, provides that, before reducing a defendant's sentence for "extraordinary and compelling reasons," the court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." *See* 18 U.S.C. § 3582(c)(1)(A). Here, the § 3553(a) factors weigh against granting relief based on Hilton's history and characteristics and the court's conclusion that Hilton remains a danger to the community. *See* § 3553(a)(1), (2)(B-C). Hilton was convicted of a serious felony involving a deadly weapon, and it appears this was not the first time Hilton engaged in conduct dangerous to the community. (*See* ECF No. 30 at 1 (describing history of two other firearm convictions involving a sawed-off shotgun and an "arsenal of weapons" in the five years prior to his November 2018 arrest); *see also* Presentence Report, ECF No. 29 ¶¶ 24-25). As this court noted at Hilton's sentencing, the concern about Hilton's prior firearms convictions resulted in his above-guidelines sentence of forty-eight months, below the government's ninety-six-month recommendation but as high as necessary for deterrence. (ECF No. 47 at 17-20). With only approximately half of his sentence served, the purposes of deterrence and protection of the community are not yet satisfied. Accordingly, the court concludes that Hilton is not an appropriate candidate for compassionate release.

## CONCLUSION

For the reasons explained above, Hilton's motion for compassionate release will be denied. The associated motions to seal will be granted to protect the confidentiality of personal medical information. A separate order follows.

10/7/21
Date

_____
Catherine C. Blake
United States District Judge

---

where he is currently incarcerated. These alone do not provide grounds for Hilton's sentence to be reduced.